# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| KEITH WHITTLE, | : | |
|---|---|---|
| Plaintiff, | : | Case No. 1:06-cv-744 |
| v. | : | Judge Holschuh |
| PROCTER & GAMBLE, et al., | : | Magistrate Judge King |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

Plaintiff Keith Whittle's Amended Complaint, filed against Procter & Gamble ("P&G") and Theodore (Ted) and Traci Cummings, asserts claims of breach of oral agreement, fraudulent inducement, and patent infringement. This matter is currently before the Court on three dispositive motions: (1) Ted Cummings' motion for summary judgment on the breach of oral agreement claim; (2) Ted Cummings' motion for summary judgment on the patent infringement claim; and (3) P&G's motion for summary judgment on the patent infringement claim. For the reasons set forth below, the Court denies Cummings' motion with respect to the breach of oral agreement claim, but grants Defendants' motions with respect to the patent infringement claims.

## I. Background and Procedural History

According to Plaintiff's Amended Complaint, in February of 1998, Defendant Ted Cummings, then an employee of P&G, orally agreed to act as Plaintiff's patent agent for the purpose of securing a patent for Plaintiff's "TriPad" invention. The TriPad, a protective sheath to be worn by athletes and construction workers, is designed to absorb the impact of external forces and to protect the body's joints and muscles from forceful blows. Plaintiff's invention

also included internal heating units that would be activated upon impact, sending heat to the area of the body subjected to the blow. These units were referred to as "activatable heating zones."

On September 3, 1998, Cummings filed Plaintiff's patent application with the United States Patent and Trademark Office ("USPTO"). The application contained twenty-one claims. Most of the claims described how the protective sheath was constructed and designed to absorb blows. The application also noted, however, that, as an option, the protective sheath could contain heating zones that would be activated upon impact. Six of the twenty-one claims included specifications for an impact structure containing these activatable heating zones.

On August 13, 1999, a USPTO examiner issued an Office Action. She rejected some of the claims related to the protective impact structure. She also rejected the six claims directed to an impact structure with activatable heating zones because the specification did not "reasonably provide enablement for having activatable heating zones." The examiner found that it was unclear how the invention would be manufactured in order to provide heat to the wearer upon impact. Plaintiff contends that he was not made aware, at that time, of the fact that the USPTO rejected these claims. (Am. Compl. ¶ 34).

On February 4, 2000, Cummings submitted a response to the Office Action, cancelling without prejudice the claims covering the activatable heating zones, and amending other claims to address the objections previously raised by the USPTO examiner. (Ex. 4 to Kemphaus Aff.). According to Plaintiff, the patent application was then abandoned for a period of time. (Am. Compl. ¶ 15).

In February of 2002, Cummings re-activated the patent application on Plaintiff's behalf. On July 8, 2003, the USPTO issued to Plaintiff U.S. Patent No. 6,588,019 for his "Impact

2

Structure for the Absorption of Impact Forces to the Body." The patent includes 13 claims, all related to the protective sheath. None of the claims includes activatable heating zones. Plaintiff alleges that he did not learn that the patent had been issued until late in 2004, and did not receive a copy of the patent from Ted Cummings until July or August of 2005. (Am. Compl. ¶¶ 18-19).

Plaintiff alleges that he later became aware that P&G was manufacturing and selling a product called "Thermacare," which appeared to incorporate his idea for the activatable heating zones. (Am. Compl. ¶ 20). He maintains that Ted Cummings and P&G misappropriated his idea.

Plaintiff filed suit against P&G, and Ted and Traci Cummings on September 12, 2006. On November 27, 2007, the Court dismissed several of Plaintiff's claims. On January 16, 2008, Plaintiff filed an Amended Complaint, re-asserting claims of breach of oral agreement, fraudulent inducement, and patent infringement. On July 11, 2008, the Court dismissed the fraudulent inducement claim, and on August 4, 2008, the Court granted Plaintiff's motion to dismiss his one and only claim against Traci Cummings with prejudice. Remaining claims therefore include Plaintiff's claim of breach of oral agreement against Ted Cummings, and Plaintiff's claim of patent infringement against Ted Cummings and P&G. Defendants have separately moved for summary judgment on each of these claims.

**II.     Standard of Review**

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to

material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

## III. Discussion

### A. Plaintiff's Response to Show Cause Orders

When Plaintiff failed to file memoranda in opposition to Defendant Ted Cummings' motion for summary judgment on the breach of agreement claim, and to P&G's motion for summary judgment on the patent infringement claim, the Court issued orders directing Plaintiff to show cause why those motions should not be granted as unopposed.

Plaintiff filed timely responses to those show cause orders, along with his memoranda in opposition. Plaintiff's counsel indicated that due to a serious medical emergency involving his youngest daughter, he was in and out of the office for several weeks. Through his inadvertence, he neglected to notice that these additional motions for summary judgment had been filed.

P&G contends that Plaintiff has not shown good cause for the Court to accept Plaintiff's late filing of his memorandum in opposition to P&G's motion for summary judgment. There can be no doubt that Plaintiff's counsel owed his client a duty to make sure that timely responses

6

were filed to the motions for summary judgment. Nevertheless, it does not appear that P&G has been prejudiced by the delay, and the Court finds that, under the circumstances presented here, Plaintiff has shown good cause for the late filings. The Court will, therefore, proceed to the merits of the pending motions.

>    B.    **Theodore Cummings' Motion for Summary Judgment on Breach of Oral Agreement Claim**

Plaintiff's Amended Complaint alleges that Ted Cummings orally agreed to properly present to the USPTO Plaintiff's entire invention, consisting of an "impact structure for the absorption of impact forces to the body" with "activatable heating zones." (Am. Compl. ¶¶ 24-25). Plaintiff further alleges that Cummings breached this oral agreement by failing to obtain a patent for all material aspects of his invention, most notably the "activatable heating zones." (Am. Compl. ¶¶ 32-33). Plaintiff maintains that Cummings did not tell him that the USPTO had rejected certain aspects of his patent application or that Cummings canceled the claims covering the "activatable heating zones." Plaintiff also accuses Cummings of forging Plaintiff's signature on certain documents submitted to the USPTO. (Am. Compl. ¶¶ 34, 40). Plaintiff contends that he has suffered damages as a result of Cummings' breach of the oral agreement.

In his motion for summary judgment, Cummings argues that Plaintiff's claim is barred by the applicable statute of limitations. Ohio Revised Code § 2305.07 provides that "an action upon a contract not in writing . . . shall be brought within six years after the cause thereof accrued." The party asserting a statute of limitations defense has the burden of proving that a claim is time-barred. <u>Rainey v. Shaffer</u>, 8 Ohio App.3d 262, 263, 456 N.E.2d 1328, 1330 (Ohio Ct. App. 1983). Under Ohio law, a cause of action for breach of oral contract does not accrue until the plaintiff discovers the failure to perform as agreed. <u>Kotyk v. Rebovich</u>, 87 Ohio App. 3d 116,

121, 621 N.E.2d 897, 901 (Ohio Ct. App. 1993), abrogated on other grounds, Sutton v. Mt. Sinai Med. Ctr., 102 Ohio App.3d 641, 657 N.E.2d 808 (Ohio Ct. App. 1995); Biro v. Hartman Funeral Home, 107 Ohio App. 3d 508, 515, 669 N.E.2d 65, 69 (Ohio Ct. App. 1995).

In the Court's view, genuine issues of material fact preclude summary judgment on the statute of limitations issue. There is simply not enough information in the record to determine when Plaintiff first learned of the alleged breach.

Cummings argues that Plaintiff's cause of action accrued in September of 1998, when the patent application was first filed because, pursuant to 35 U.S.C. § 132, once the USPTO rejected the activatable heating zone claims for lack of enablement, Cummings was not permitted to amend the application to add new material to cure the deficiency. Cummings notes that it is undisputed that Plaintiff signed that patent application, acknowledging that he had reviewed and understood its contents.

The Court rejects Cummings' argument that because Plaintiff signed the allegedly defective patent application in September of 1998, he was aware of the breach at that time and his cause of action accrued on that date. Cummings implies that because the patent application contained only a limited discussion of the activatable heating zones, Plaintiff should have known that the application was inadequate and that those particular claims would be rejected by the USPTO. In the Court's view, however, a layperson cannot be expected to know whether a particular specification contained in a patent application is legally sufficient. Plaintiff justifiably relied on Cummings' alleged expertise in drafting the patent application.

In the alternative, Cummings argues that Plaintiff's cause of action accrued, at the latest, in August of 1999, when the USPTO rejected Plaintiff's claims concerning the activatable

8

heating zones. However, this presumes that Plaintiff was aware that the claims had been rejected. Plaintiff's Amended Complaint alleges that "when the application went into abandonment, Plaintiff was led to believe that Theodore Cummings was using the funds to obtain the original application out of abandonment when in fact certain aspects of the file had been rejected without prejudice but Plaintiff was not made aware of that fact at that time." (Am. Compl. ¶ 34). Plaintiff also alleges that he was not aware of, and had not agreed to, the cancellations contained in the later filing. (Am. Compl. ¶ 35). The Amended Complaint further alleges that:

> Plaintiff was unaware at that time, the U.S. Patent and Trademark Office purportedly rejected certain parts of Plaintiff's submissions and that Theodore Cummings forged Plaintiff's signature and submitted work that Theodore Cummings represented was authorized by Plaintiff's purported signature.

(Am. Compl. ¶ 40). Plaintiff argues that he did not discover that Cummings had failed to obtain a patent that included the activatable heating zones until August of 2005, when he finally obtained a copy of the July 8, 2003 patent from Cummings.

Cummings argues that, despite the allegations in the Amended Complaint, Plaintiff has submitted no evidence to support a finding that Plaintiff was unaware that the USPTO had rejected his activatable heating zone claims in August of 1999 because of a lack of enablement. Plaintiff did, however, submit an affidavit in support of his memorandum in opposition to Cummings' motion for summary judgment on the patent infringement claim. Plaintiff avers that "Theodore Cummings forged my signature and submitted documents to the United States Patent Trade [sic] Office purportedly on my behalf without my approval or knowledge." (Pl. Aff. ¶ 13). Viewing this evidence in connection with the allegations contained in the Amended Complaint,

9

it could be inferred that Cummings forged Plaintiff's signature on later documents submitted to the USPTO in order to conceal from Plaintiff the fact that the USPTO had rejected the claims covering the activatable heating zones, and the fact that Cummings had cancelled those claims on his behalf.

The Court also notes that Cummings has submitted no evidence to rebut Plaintiff's allegations. For example, Cummings has not submitted an affidavit indicating when, if ever, he notified Plaintiff that the claims covering the activatable heating zones were rejected by the USPTO. Nor has Cummings submitted an affidavit stating that he notified Plaintiff that he cancelled those claims without prejudice. Finally, Cummings has not submitted an affidavit denying that he forged Plaintiff's signature on documents subsequently submitted to the USPTO.

These unexplained gaps lead the Court to conclude that there is genuine issue of material fact concerning when Plaintiff learned that Cummings had breached his alleged agreement to obtain a patent covering all material aspects of Plaintiff's invention, including the activatable heating zones. The Court therefore denies Cummings' motion for summary judgment on this claim.

### C. Ted Cummings' and P&G's Motions for Summary Judgment on Patent Infringement Claims

Ted Cummings and P&G have also moved for summary judgment on Plaintiff's patent infringement claim. Broadly construed, Plaintiff's Amended Complaint alleges that Defendants knew or should have known that they were infringing on Plaintiff's idea for activatable heating zones at the time they engaged in selling, marketing, and otherwise offering for sale P&G's Thermacare line of products. (Am. Compl. ¶ 52). Plaintiff essentially alleges that Cummings stole his idea for the activatable heating zones and shared it with P&G, which then incorporated

10

it into its Thermacare line of products and, in 2000, filed a continuation of a patent originally issued in 1996 for a "Thermal Pack Having a Plurality of Individual Heat Cells." (Patent Nos. US 6,020,040 and US 6,019,782). According to Plaintiff, Defendants violated 35 U.S.C. § 271(a), which provides that ". . . whoever without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent therefor, infringes the patent."

P&G argues that because the portion of Plaintiff's invention that was allegedly infringed, *i.e.*, the activatable heating zones, is not protected by the claims contained in Plaintiff's patent, Plaintiff's cause of action for patent infringement must fail. The Court agrees. Although Defendants' conduct may give rise to other causes of action, it does not give rise to a claim of patent infringement, and cannot as a matter of law.

The patented invention at issue in this case, Plaintiff's Patent No. U.S. 6,588,019, is entitled "Impact Structure for the Absorption of Impact Forces to the Body." It contains one independent claim and twelve dependent claims. The independent claim consists of "[a] flexible and resilient impact structure for the absorption of impact forces directed toward a wearer and positioned onto a wearer's body, comprising: a sheath having two ends, an opening positioned at each said end, a perimeter positioned about each said end; and at least one impact zone positioned on the impact structure. . ." The twelve dependent claims include information about how the impact zones are positioned on, and attached to, the sheath, and information about the materials that may be used to construct the sheath and the impact zones.

The claims contained in the patent contain no mention whatsoever of activatable heating zones. As discussed earlier, the original patent application included claims covering these activatable heating zones, but after the claims were rejected by the USPTO for lack of

enablement, Plaintiff cancelled these claims without prejudice. Plaintiff admits that the patent does not include this particular aspect of his invention. (Am. Compl. ¶ 29). In fact, this is the basis for his breach of agreement claim against Cummings.

The "summary" section of patent does state, "[a]lternatively, the impact structure may deliver heat to a wearer. This structure preferably comprises activatable heating zones" that are "preferably activated upon impact to one or more of the impact zones." However, because the activatable heating zones are not included within the scope of the patent's claims, they are not a protected idea and cannot be the subject of a patent infringement claim. As the Federal Circuit Court of Appeals explained in Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), "[t]he written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims." Id. at 980.

Plaintiff argues that even if there is no literal infringement of the claims contained in his patent, he is entitled to recover under the "doctrine of equivalents." The doctrine of equivalents permits a court to find infringement when an accused product is the substantial equivalent of the patented invention. See Festo Corp. v. Shoketsu Kogyo Kabushiki Co., 535 U.S. 722, 732 (2002). In this case, under no stretch of the imagination can it be said that P&G's Thermacare product is the substantial equivalent of Plaintiff's patented invention. Thermacare consists of disposable pads designed to deliver heat to a particular area of the body. Plaintiff's patented invention, on the other hand, consists of a protective sheath designed to absorb the impact of forceful blows. The form and function of the two products are very different. The doctrine of equivalents is therefore inapplicable.

For the reasons stated above, the Court concludes that there is no genuine issue of

material fact and that Defendants are entitled to judgment as a matter of law on Plaintiff's patent infringement claims.[1]

IV.     **Conclusion**

For the reasons set forth above, the Court **DENIES** Defendant Theodore Cummings' motion for summary judgment on Plaintiff's claim of breach of oral agreement (Doc. 97), but **GRANTS** Defendant Theodore Cummings' motion for summary judgment on Plaintiff's claim of patent infringement (Doc. 83) and **GRANTS** Defendant P&G's motion for summary judgment on Plaintiff's claim of patent infringement (Doc. 100). P&G's motion to dismiss for lack of prosecution and, in the alternative, motion to compel discovery (Doc. 101) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**


Date: December 1, 2008                             **/s/ John D. Holschuh**
                                                   John D. Holschuh, Judge
                                                   United States District Court

---

[1] Because the Court finds that Defendants' conduct does not constitute patent infringement, the Court need not address other issues raised in Cummings' motion for summary judgment.